UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Appellee | : | |
| v. | : | Record No.: 19-4553 |
| | : | |
| THOMAS GILLEN, | : | |
|     Appellant | : | |

**GOVERNMENT'S OPPOSITION TO**
**<u>APPELLANT GILLEN'S MOTION TO SUPPLEMENT THE RECORD</u>**

COMES NOW the United States, by and through its counsel, Assistant United States Attorney Laura Day Rottenborn, and opposes Defendant-Appellant Thomas Gillen's Motion to Supplement the Record.

This sole issue on appeal is whether the Anti-Riot Act, 18 U.S.C. §§ 2101-2102, is constitutional. Defendant-Appellant Thomas Gillen claims the statute is facially unconstitutional, as well as unconstitutional as applied to him. As for the latter argument – the as-applied challenge – Gillen has filed a Motion to Supplement the Record with alleged evidence of selective prosecution. He wrongly claims the U.S. Attorney for the Western District of Virginia engaged in constitutionally impermissible discriminatory prosecution against White Supremacists. Gillen claims there is evidence of the prosecuting office's "axe to grind against the ideologies of 'white supremacy' and 'far-right extremism.'" Dkt. No. 24-1 at 11. Although Gillen did not make a selective prosecution argument

1

to the district court below, he argues this Court should now allow him to supplement the record with such alleged "evidence" to determine whether the Anti-Riot Statute is constitutional as applied to him.

The Court should respectfully deny Gillen's untimely request. In support of its opposition to the motion, the government states as follows:

1. Defendant-Appellant Thomas Gillen was a member of the Rise Above Movement (RAM), a southern California-based white supremacist organization that traveled to Charlottesville to commit acts of violence in connection with the August 12, 2017, "Unite the Right" rally.

2. The Unite the Right Rally was organized to occur on August 12, 2017, at Emancipation Park in Charlottesville, Virginia. The rally was widely promoted on social media and internet sites associated with white-supremacist individuals and groups, and was scheduled to feature a lineup of well-known white-supremacist speakers.

3. At the time, RAM was located in the greater Los Angeles, California area and represented itself as a combat-ready, militant group of a new nationalist white supremacy and identity movement. RAM regularly held hand-to-hand and other combat training for its members and associates to prepare to engage in violent confrontations with protestors and other

individuals at purported political rallies. Gillen attended these trainings to prepare for violence.

4. Gillen, along with other RAM members, including those who eventually became his co-defendants, decided to attend the Unite the Right Rally in Charlottesville.  They flew from California to Virginia.  As will be described in detail in the government's brief on the merits, the RAM members traveled with the intent to commit acts of violence in furtherance of a riot.

5. On the morning of August 12, 2017, multiple groups and individuals espousing white supremacist and other anti-Semitic and racist views, including Gillen and his fellow co-defendants, arrived in and around the vicinity of Emancipation Park in Charlottesville, Virginia, to attend the Unite the Right rally. When they showed up to Emancipation Park, Gillen and his co-defendants wrapped their hands with white athletic tape they had purchased the day prior, ready to fight.  A co-defendant carried their baseball helmets in his backpack. After several instances of violence prior to the scheduled start of the rally, law enforcement declared an "unlawful assembly" and required rally participants to disperse.  One of the first breakouts of violence on the morning of August 12 involved

Gillen and his co-defendants. It occurred on 2nd Street NE, between Jefferson and High Streets, in downtown Charlottesville. Gillen was part of a large group of (over forty) individuals seeking entry to Emancipation Park by way of 2nd Street NE, but were told by members of law enforcement they had to enter from a different location. The group, including Gillen and his fellow co-defendants, turned around, lined up, and began to make their way through a group of (over twenty) individuals who had come to the rally to protest against racial and other forms of discrimination. As they made their way through the group of protestors, Gillen and his fellow RAM members collectively pushed, punched, kicked, choked, head-butted, and otherwise assaulted several individuals, resulting in a riot.

6. On October 10, 2018, a federal grand jury indicted Gillen and his co-defendants on two counts: Count One charged the defendants with a conspiracy to violate 18 U.S.C. § 2101, in violation of 18 U.S.C. § 371, and Count Two charged the defendants with a substantive violation of 18 U.S.C. § 2101 for their travel and acts of violence in furtherance of a riot in Charlottesville. ECF 8.

7.  Gillen and his co-defendants filed Motions to Dismiss the Indictment, alleging the Anti-Riot Statute is unconstitutional. All parties filed extensive briefing and district court heard oral argument. On May 2, 2019, the district court issued an opinion denying the Motions to Dismiss and upholding the constitutionality of the Anti-Riot Statute. ECF 104; *United States* v. *Daley*, 378 F. Supp. 3d 539 (W.D. Va.) (No. 3:18-cr-25-NKM-JCH-1), appeal pending sub nom. *United States* v. *Miselis*, No. 19-4550 (4th Cir. docketed July 30, 2019).

8.  In April and May 2019, all of the defendants pleaded guilty to Count One in exchange for dismissal of Count Two. ECF 98. As more completely stated in the plea agreement, Gillen's completion of prosecution provision also included additional language that he not be prosecuted for violation of 18 U.S.C. § 922(g) for the firearm possession that was discovered as a part of the investigation in this case. ECF 101. As part of the plea agreement, Gillen waived his right to appeal, with one limited exception. He reserved his right to appeal as to any issue that cannot be waived as a matter of law, as well as a claim the Anti-Riot Statute is unconstitutional. ECF 101.

9. Sentencing was held on July 26, 2019, and the district court sentenced Gillen to 33 months in prison. ECF 159.

10. Gillen timely appealed his conviction, as did two other co-defendants. A remaining defendant did not appeal.

11. On July 31, 2019, Gillen filed his docketing statement in this Court, stating the only issue on appeal is the "Constitutionality of 18 U.S.C. sec. 2101." Dkt. No. 9. That is the same issue on appeal by the other two defendants. *See* Case No. 19-4550. Nonetheless, Gillen sought to deconsolidate his appeal from his co-conspirators, which the government opposed. This Court granted Gillen's motion. Dkt. No. 19.

12. The government is prepared to defend the constitutionality of the Anti-Riot Act both in this case and the companion appeal. The Anti-Riot Act was enacted in April 1968 and was most famously invoked to prosecute conduct that occurred only a few months later, in the case of the "Chicago Seven" for their roles in violence at the 1968 Democratic National Convention. Several of those defendants were convicted, and on appeal the Seventh Circuit rejected the argument that the Anti-Riot Act is facially unconstitutional under the First Amendment. *See United States* v. *Dellinger*, 472 F.2d 340, 354-364 (7th Cir. 1972), *cert. denied*,

410 U.S. 970 (1973).  The facial constitutionality of the statute remains today.  The Anti-Riot Statute is also constitutional as applied to Gillen. In the district court below, Gillen mounted an as-applied challenge, contending that the "First Amendment precludes § 2101 from applying to disorders arising from political demonstrations like the one [Defendants] attended in Charlottesville."  *See* Dkt. No. 104 at 24.  He did not argue it was unconstitutional as applied to him on the baseless ground he asserts now:  that the government was allegedly enforcing the statute unconstitutionally discriminately against White Supremacists.  The district court rejected Gillen's as-applied challenge.  It held:  "Although the indictment contains indicia that some protected expression may have occurred at the two alleged riots on August 11–12, 2017, (*see, e.g.*, Dkt. 8 ¶¶ 1–3), the indictment does not seek to punish Defendants for engaging in peaceful protest or pure political expression. Rather, the indictment charges Defendants with interstate travel followed by incitement of, and acts of violence at, the two alleged riots, as well as with conspiracy to commit this offense. (*Id.* ¶¶ 9, 10(k), 10(n), 13)."  Dkt. No. 104 at 24. Said another way, Gillen and his co-defendants engaged in actual acts of violence, which are unequivocally outside the protections of the First

7

Amendment. Thus, to the extent the statute could be applied to otherwise protected speech, that hypothetical concern did not exist in this case, and Gillen's as-applied challenge failed.

13. Gillen now wishes to make a new argument: alleged selective prosecution against White Supremacists. That argument is untimely and has been waived. Had Gillen wished to make that argument, which amounts to an alleged defect in the institution of the prosecution or in alleged violation of the Fifth and Fourteenth Amendments, he had to have done so in a pre-trial motion, such as a motion to dismiss the indictment. Rule 12 explicitly requires that selective prosecution claims – such as the one Gillen now seeks to raise for the first time to this Court – be raised before trial. Fed. R. Crim. P. 12(b)(3)(A)(iv). Because Gillen did not raise it pretrial, where a full record would have been developed to meet this claim, he has waived any such argument and cannot not ask this Court to consider it. *See United States v. Salahuddin*, 765 F.3d 329, 349 (3d Cir. 2014); *United States v. Lawrence*, 735 F.3d 385 (6th Cir. 2013); *see also generally United States v. Armstrong*, 517 U.S. 456 (1996); *United States v. Bass*, 536 U.S. 862 (2002). Moreover, any arguments based on selective prosecution or alleged violations of the Fifth or

Fourteenth Amendment are covered by the scope of Gillen's appellate waiver. Gillen should not be allowed to back-door a selective prosecution argument by bootstrapping it to an as-applied constitutional challenge to the Anti-Riot Statute.

For the above-stated reasons, the United States respectfully opposes Gillen's Motion to Supplement the Record.

    Respectfully submitted,

    THOMAS T. CULLEN
    UNITED STATES ATTORNEY

    /s/ Laura Day Rottenborn
    Assistant United States Attorney
    VA Bar No. 94021
    IL Bar No. 6289334
    United States Attorney's Office
    Laura.Rottenborn@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of October, 2019, the foregoing Opposition was filed with the Clerk of the Court using the CM/ECF System, which will send notice and constitute service of such filing to counsel for the Appellant.

/s/ Laura Day Rottenborn
Laura Day Rottenborn
Assistant United States Attorney
